(79 N. W. Rep. 856.)

---

COMMERCIAL BANK *vs.* THE RED RIVER VALLEY NATIONAL BANK.

Opinion filed May 17, 1899.

**Principal and Agent in Collection of Paper.**

Two promissory notes, made by R., who resides at Fargo in this state, were indorsed and delivered by the payees thereof to the plaintiff at its place of business in Rochester, N. Y. The notes were so delivered to plaintiff for collection only. Plaintiff transmitted the notes to the defendant at Fargo for collection. *Held* that, as between the plaintiff and defendant, the relation of principal and agent was created, and that the defendant was a subagent of the payees of the notes.

**Real Party in Interest—Action for Negligence.**

> *Held,* further, under section 4133, Rev. Codes, that the plaintiff is a real party in interest, and can therefore maintain an action against the defendant for any damages arising from the negligence of the defendant in the matter of such agency.

**Negligence of Collecting Agent—Damages.**

> *Held,* under the facts as stated in the opinion, that the defendant was negligent in the discharge of its duties and obligations as such agent, and that such negligence resulted in damages to the plaintiff.

**Prima Facie Measure of Damages.**

> *Held,* further, where an agent for the collection of commercial paper is guilty of negligence with respect to such agency, that the measure of damages for such negligence is prima facie the amount of the paper, with interest . *Held,* under the evidence in this case, that the prima facie measure of damages must prevail.

**Good Faith of Agent for Collection.**

> *Held,* further, under section 4111, Rev. Codes, that a party in this state, who assumes to act as an agent for the collection of any claim, is bound to give such collection the preference over any similar claim which the agent may have on his own account against the same debtor. If the agent cannot do this, good faith requires him to decline such collection.

Appeal from District Court, Cass County; *Pollock, J.*

Action by the Commercial Bank against the Red River Valley National Bank of Fargo. Judgment for defendant, and plaintiff appeals.

Reversed.

*Newman, Spalding & Stambaugh,* for appellant.

Plaintiff has such an interest in the matter in controversy as to enable it to maintain the action. It was liable to E. P. Reed & Co. for damages sustained by them for the non-collection of the notes. The transaction between plaintiff and Reed & Co. was a New York contract and governed by the laws of that state. Reed & Co. can sue and recover from plaintiff under the laws of New York. *Allen* v. *Merchants' Bank,* 22 Wend. 215; 34 Am. Dec. 289 and n.; *Montgomery Bank* v. *Albany Bank,* 7 N. Y. 459; *Ayrault* v. *Pac. Bk.,* 47 N. Y. 570; *Commercial Bank* v. *Union Bank,* 11 N. Y. 203; *Exchange Nat. Bank* v. *Third Nat. Bk.,* 112 U. S. 276. This is the law of North Dakota. § 4133, Rev. Codes. And of other states. *Sthreissguth* v. *Bank,* 44 N. W. Rep. 797; *American Express Company* v. *Haire,* 21 Ind. 4; *Titus* v. *Bank,* 35 N. J. L. 588; *Reeves* v. *Bank,* 8 Ohio St. 465; *Simpson* v. *Waldly,* 63 Mich. 439, 30 N. W. Rep. 199; *Van Wart* v. *Wooley,* 3 Barn. & Cres. 439. It was defendant's duty to exercise reasonable care and diligence in the performance of its assumed duties. *First Nat. Bank* v. *Fourth Nat. Bank,* 77 N. Y. 320. To give plaintiff's business preference to its own. § 4111, Rev. Codes. And to keep plaintiff informed of its acts. § 4131, Rev. Codes. It failed to discharge any of these duties

and is liable in damages therefor. *Mound City Co.* v. *Bank,* 9 Pac. Rep. 709. The instructions of plaintiff could not be varied, modified or superceded by any local usage. The Reeside, 2 Sum. 567, 20 Fed. Cas. 458; *Insurance Co.* v. *Wright,* 1 Wall. 470; *De Witt* v. *Berry,* 134 U. S. 312; 1 Greenl. Ev. 292; § 3896, 3897, Rev. Codes. The measure of damages is prima facie the amount of the notes and interest . The burden is on defendant to mitigate damages. *Miranda* v. *Bank,* 26 Am. Dec. 493; *Durnford* v. *Patterson,* 12 Am. Dec. 514; *Washington* v. *Triplett,* 1 Pet. 25; Mechem on Agency, § 518; Sedgwick Dam. 340; Story, Agency, 219; Daniel's Neg. Inst. § 329; *Borup* v. *Nininger,* 5 Minn. 523; Suth. Dam. 18; *Allen* v. *Suydam,* 20 Wend. 330; *Mound City Co.* v. *Bank,* 9 Pac. Rep. 709.

*Mills, Greene & Resser,* for respondent.

The burden is upon plaintiff to show both negligence and that it was damaged by it. *Nat. Bk.* v. *Bank,* 91 U. S. 92; *Fabens* v. *Bank,* 23 Pick. 330; *Warren Bank* v. *Suffolk,* 10 Cush. 582; *Sahlien* v. *Bank,* 90 Tenn. 221, 16 S. W. Rep. 373; *Bruce* v. *Baxter,* 7 Lee. 477. Defendant had a right to prefer its own claim in taking security. *Freeman* v. *Bank,* 78 Ia. 150; *U. S. Nat. Bank* v. *Westerfelt,* 75 N. W. Rep. 857. The debtor was insolvent and no damages are proven. *Sahlien* v. *Bank,* 16 S. W. Rep. 373; *Exchange Nat. Bk.* v. *Bank,* 112 U. S. 276.

WALLIN, J. This is an action to recover damages of the defendant for alleged negligence and want of good faith in discharging its obligations as the agent of the plaintiff. The record shows: that the firm of E. P. Reed & Co., of Rochester, N. Y., were the payees in, and the owners of, two promissory notes which were executed and delivered to said firm by E. M. Robinson, a merchant doing business at Fargo, N. D. One of said notes was for $125, and bore date December 17, 1894. The other was for $180.35, and was dated January 1, 1895. Each note matured 90 days after its date. That, prior to the maturity of said notes, the said payee and owner thereof indorsed the same in blank, and delivered them to the plaintiff for collection only; said plaintiff then and ever since being a national bank, located and doing business at Rochester, in the State of New York. It appears that, prior to their maturity, the plaintiff transmitted said notes to the defendant, and the defendant received the same as agent, for collection and remittance; the said defendant then and now being a national bank, located and doing business at Fargo, N. D. Each of said notes, when sent to the defendant, was accompanied by a letter of transmittal, upon which were written and printed certain directions to the defendant. The following directions were printed: "Do not hold for collection for the convenience of parties. Return at once, if not paid. Protest all paper, unless otherwise ordered." The following direction was in writing: "No pro." (meaning no protest). The notes were presented by the defendant to E. M. Robinson for

payment, but they were not paid.   Defendant omitted to make the usual acknowledgment of the receipt of the collection; and, without doing so, it held the note first falling due a period of about 30 days after it had matured, and the other about 14 days after it fell due, before making any reply whatever to plaintiff's letter of transmittal.   It further appears that on April 18, 1895, in reply to a telegram of inquiry sent by the plaintiff on that day, the defendant made its first report to the plaintiff upon the subject-matter of said collections.   Defendant's reply dispatch to plaintiff was as follows: "Robinson's notes unpaid.   Shall we return?   No prospect of payment."   Upon the receipt of this telegram the plaintiff demanded the notes, and they were turned over to the plaintiff's attorneys on April 22, 1895.   Subsequently, and before this action was commenced, the plaintiff caused a demand of payment to be made upon E. M. Robinson; but the notes were not paid, and have never been paid.   But it further appears that, in the interval elapsing after receiving plaintiff's letters of transmittal and before the 18th day of April, 1895, on which date said telegram of inquiry was received by defendant, certin highly important financial transactions were had between said E. M. Robinson and the defendant.   These transactions are perhaps best stated in the language of the findings of fact, and are as follows: "That on or before the 15th day of April, 1895, and while said notes remained in the possession of the defendant, as aforesaid, for collection, the said Robinson was indebted to the defendant in the sum of $9,378, a part of which indebtedness had been standing against Robinson, and in favor of the defendant, for more than one year, and from time to time had been increased by advances made by defendant to said Robinson until it aggregated the sum above mentioned; that on the said 15th day of April, for the purpose of securing the amount of said Robinson's indebtedness to the defendant, the defendant, without notice to the plaintiff, took from said Robinson to itself the following securities: First, a chattel mortgage upon the stock of boots, shoes, trunks, and other merchandise contained in the store in the City of Fargo, known as the 'St. Louis Shoe Store'; second, a mortgage upon the farm of said Robinson, consisting of 680 acres of land situated in Cass county, N. D., and subject to a prior mortgage of $6,500, which mortgages were given to seure a note of $9,000, dated February 28, 1895, and due September —, 1895, given by said Robinson to the defendant on said 15th day of April, 1895, and due 60 days after the date thereof."   The Court further finds "that the security so taken by the defendant upon the property of said Robinson covered substantially all of said Robinson's property, except certain stock in the defendant bank and his household effects, and that said bank stock had been pledged by said Robinson as collateral security for an indebtedness to one Hector; that the security so taken from said Robinson by the defendant was not excessive; and that there was realized from the sale thereof less than the amount of the indebted-

ness of the defendant bank." The Court further finds that no inquiry about the notes was received by the defendant from the plaintiff prior to said 18th day of April, as before stated. The Court finds also that at the time said notes were renewed by the defendant, and at all times thereafter, the defendant was insolvent, and that "from and after April 15, 1895, was known by the defendant to be insolvent, and unable to pay his debts as they matured." The Court further finds "that it was the local usage and custom of banks in said City of Fargo and vicinity, when notes were sent to them for collection, with instructions not to protest the same, to retain possession of the notes for the purpose of effecting a collection thereof at a later time, if possible, and that the defendant, pursuant to such local usage and custom, retained possession of the notes aforesaid after the presentation of the same for the purpose and with the expectation of making collection thereof from said Robinson, and so retained the same until the 22d day of April, 1895, when the said notes were, by direction of the plaintiff, delivered to the Fargo attorneys of the plaintiff." Certain other facts which appear by the undisputed evidence should be stated. It appears that the notes, after being turned over by defendant to the plaintiff's attorneys for collection, were not collected, and could not be collected, of Robinson. At that time all of his visible assets not exempt from seizure had been fully covered by mortgages taken by the defendant to secure its own claims against Robinson. The notes were properly presented for payment by plaintiff's attorneys, but they were not paid. Suit on the notes was not commenced, because a suit would have been fruitless. Under the testimony, it was deemed a "hopeless case" after the defendant obtained its mortgages. At the time the notes were received by the defendant, E. M. Robinson was engaged as a merchant in the business of selling boots and shoes, and had a store at Fargo, in which there was a stock of goods worth not less than $2,500. This merchandise was not then incumbered, nor was his real estate incumbered to its full value at that time. He was seriously embarassed, it is true, but still was then in a position to secure small claims such as those in question. The president of the defendant bank was a witness, and testified as follows: "I have the account of E. M. Robinson from March 1st until the 16th day of April, 1895. It shows the deposits and checks for each day. On the 1st day of March he was overdrawn $1,216.40. On the 2d day of March he deposited $20. On the same day we made him a loan of sufficient money to cover his overdraft and take up a certain number of collections that were here in the hands of attorneys that were pressing him. We made him a loan of $1,822.90, which covered the overdraft of $1,216, and provided for some checks that he was to pay for merchandise accounts,—some in the hands of attorneys here, and some he wished to remit. They were all notes and collections long past due. The other deposits are small ones,—$20 or $30 each day until the 16th day of April, when there was another loan made him of $366 to

pay some note. He did not have any balance to his credit subsequent to that loan of $1,800. There was no balance on any day when these checks are charged up which he issued to provide for out of this deposit. He did not have at any time any balance to his credit subject to check. Even more than that, the checks came in faster than the deposits were made. The account was largely an overdrawn account. He deposited every day what he took in, but never enough to keep up with the checks." Upon the state of facts as disclosed by this record, the trial court found the following conclusions of law: "(1) That the plaintiff is not the real party in interest, and cannot maintain this action; (2) that the plaintiff has sustained no damages by reason of any act or omission of the defendant relating to said notes or otherwise, or at all." The action was accordingly dismissed below, and judgment was entered for costs against the plaintiff. In this Court a retrial of the entire cause is demanded by the plaintiff.

Taking up the conclusions of law as made by the trial court in their order, we are compelled to hold that the court below erred in deciding that the plaintiff was not the real party in interest, and that it cannot for that reason maintain this action. It is true that the question whether an agent of an agent is liable to the principal in damages for a loss caused by the acts of the sub-agent has been much discussed by the courts, and there is good authority on both sides of the question. See extended notes and citation of cases appended to the case of *Allen* v. *Bank,* 34 Am. Dec. 289. In New York and some other states and in the federal courts the rule that the agent can maintain an action against the subagent for the negligence of the latter, and that the principal cannot do so, is firmly established. See *Allen* v. *Bank,* supra; also, *Ayrault* v. *Bank,* 47 N. Y. 570; *Montgomery Co. Bank* v. *Albany City Bank,* 7 N. Y. 459, affirming in part 8 Barb. 396. See, also, *Mound City Paint & Color Co.* v. *Commercial Nat. Bank* (Utah) 9 Pac. Rep. 709; *Simpson* v. *Waldby,* 63 Mich. 439, 30 N. W. Rep. 199; *Streissguth* v. *Bank* (Minn.) 44 N. W. Rep. 797; and *Exchange Nat. Bank of Pittsburgh* v. *Third Nat. Bank of New York,* 112 U. S. 276, 5 Sup. Ct. 141. But in this state the controversy has been set at rest by section 4133 of the Revised Codes, which is as follows: "A mere agent of an agent is not responsible as such to the principal of the latter." Applying this rule to the case at bar, the defendant is not legally responsible to E. P. Reed & Co., who own the notes in question, and who are the principals of the plaintiff. The owners of the notes have no contractual relations with the defendant. They dealt solely with the plaintiff and under the rule of law which obtains in New York, and in this state they are required to look only to the plaintiff for redress or damages for any acts of negligence to their detriment done either by the plaintiff or by agents appointed by the plaintiff. A corollary of this rule of law requires that the plaintiff, who must respond in damages to its principal (Reed & Co.) for the consequences of the defendant's

derelictions of duty, can have redress over against the defendant. And this rule is sustainable, not only on principles of justice, but by the cases above cited as well. If the sub-agent cannot be held liable by the original principal, he would escape liability entirely but for the rule that he is answerable to his immediate principal, the agent originally chargeable; and we therefore hold, under the authorities cited, that he is so responsible.

But the remaining questions are much more difficult of solution. The trial court holds that the plaintiff has sustained no damages by reason of any act or omission of the defendant relating to said notes. This would be technically true, of course, if, under the law, the plaintiff could not maintain an action against the defendant for the negligence charged in the complaint; but, as we hold the reverse of this, it becomes necessary to inquire whether, under the evidence and the facts found, an action can be maintained against the defendant. After mature consideration, we are constrained to hold that the action can and should be upheld. But, before proceeding to discuss such features of the case as we deem decisive, we will briefly advert to a point which we consider of subordinate consequence. We refer to the matter of the printed and written letters of transmittal in which the two notes in question were respectively indorsed by plaintiff and sent to the defendant. On their face, when literally construed, these instructions are entirely plain and explicit. They required the defendant not to hold the notes for the convenience of the debtor, and directed that the same be returned "at once, if not paid." We have seen that these instructions were wholly ignored by the defendant, and that one note was held about 30 days after its maturity, and the other about 14, and that the notes were not surrendered to plaintiff until a written order for the same was presented by plaintiff's attorneys, and the notes demanded. But defendant contends that its failure to comply literally with such instructions was in conformity to a business usage prevailing among bankers in this state with respect to "no protest" collections sent to them. The Court has found that such usage exists, as has been already seen, and we are inclined to think that the finding is fully justified by the evidence contained in the record. Under the evidence, the usage is such that it wholly abrogates the printed instructions as to a prompt return of the paper, if the same is unpaid. But counsel for plaintiff strenuously contends that no mere usage, however general it may be, can nullify the specific instructions of a principal to an agent. The question is one of importance, but, as we have said, is not, in our opinion, necessarily decisive of this case. We shall therefore content ourselves with the citations of authority bearing upon it, and leave the point undecided. See 1 Morse, Banks, § 9, note 21; also, *President, etc.* v. *Triplett,* 1 Pet. 25. Contra: Mechem, Ag. p. 327, note 2; *Wanless* v. *McCandless,* 38 Ia. 20; *D. M. Osborne & Co.* v. *Rider,* 62 Wis. 235, 22 N. W. Rep. 394; *Greenstine* v. *Borchard,* 50 Mich. 434, 15 N. W. Rep. 540; *Day* v. *Holmes,* 103 Mass. 306.

· See views of Judge Story in The Reeside, 2 Sumn. 567, 20 Fed. Cas. 458 (No. 11657). Assuming, for the purposes of the case, that the special instructions to the defendant are not binding by reason of said usage,—a view of the case which is quite favorable to the defendant,—the question is presented whether, upon the evidence and facts in this case, the defendant is liable under established principles of the law governing the relation of principal and agent. At the common law, as well as by the express provisions of the Civil Code, an agent rests under certain obligations, and is bound to perform certain duties, with respect to his principal; and if such obligations are disregarded and such duties are left unperformed, and damages result therefrom, an action against the agent will lie to recover such damages. Among those most prominent and familiar of the obligations and duties of an agent are the following: In the performance of his duties an agent is bound to exercise that degree of skill, care, and diligence which the nature of his undertaking calls for with reference to the time, place and circumstances surrounding the undertaking. Again, an agent is bound to observe such precautions as are ordinarily observed in relation to the business with which he is intrusted. While, on the one hand, the employer will be required to submit to such incidental losses as may occur in the course of the employment, on the other hand, the agent will be held responsible in the law for losses which are the result of his own want of diligence, or his bad faith or dishonesty. These rules are entirely elementary, and citations in their support are needless, and none will therefore be made. We shall content ourselves with quotations from the Civil Code of the state, in which some of these familiar principles are tersely expressed in the form of statutory enactments. Section 4131 reads: "An agent must use ordinary diligence to keep his principal informed of his acts in the course of his agency." Section 4106 reads: "An employe is bound to exercise a reasonable degree of skill unless his employer has notice before employing him of his want of skill." Section 4107 declares: "An employe is bound to use such skill as he possesses so far as the same is required for the services specified." Section 4111 is as follows: "An employe who has any business to transact on his own account similar to that intrusted to him by his employer must always give the latter the preference. If intrusted with similar affairs by different employers he must give them preference according to their relative urgency, or other things being equal, according to the order in which they were committed to him." In the light of these provisions of the statute, voicing, as they do, well-established principles of the law of agency, the question is presented whether the defendant, as plaintiff's agent for the collection of the notes in question, has discharged its obligations as such agent with reasonable fidelity, and if it has failed to do so, whether damages have resulted to the plaintiff from such failure. After careful consideration of the entire case as disclosed by the record, this Court is unanimously agreed that the defendant

has neglected to discharge its duties and obligations in the premises, and that such neglect has resulted in damages to the plaintiff. It is conceded that, during the whole period of its agency, the debtor (Robinson) was a stockholder and director of the defendant, and that he kept a deposit account with the defendant. At the time the notes were received for collection Robinson was largely indebted to the defendant, and the amount of such indebtedness had been augmenting for years. Besides the large demand of the defendant, other creditors were pressing Robinson for payment, to the defendant's knowledge, and, after receiving the notes for collection, the defendant itself made a loan to Robinson to a considerable amount to enable him to meet the claims of creditors who would not be longer postponed. It is apparent from the record that the defendant was in close confidential relations with the debtor, and thoroughly understood the fact that Robinson was liable at any hour to be assailed by his creditors, and that, if so assailed, he would not be able to meet and pay his obligations if his property should be sold at forced sale for that purpose. The president of the defendant testified, in effect, that the security taken of Robinson by the defendant was intended to prevent Robinson's goods from being sold under the hammer and at a sacrifice. Under these circumstances, the question arises whether the defendant, as the agent of the plaintiff, faithfully discharged its duty with respect to the notes in question. Defendant, as a bank and as a collector, is presumed to know what business prudence demanded, in view of Robinson's critical financial condition when the notes reached the bank and at all times while the agency continued. When the notes reached the bank, and for many weeks thereafter, the debtor was doing business as a merchant at Fargo, and had a stock of goods worth at least $2,500 in his store, which was unincumbered. Besides he had valuable real estate in the same county which was only partially incumbered. Under such circumstances, we think that a vigorous collector might reasonably expect to collect these notes in whole or in part, or at least would have a reasonable chance to secure their payment if the proper effort had been made in that direction. True, the defendant might not have been authorized to accept security from Robinson; but the case was one of great urgency, and to the defendant's knowledge prompt action of some kind was demanded. The exigency was such that, if the defendant did not deem itself authorized to proceed to extremities, it certainly was its duty to inform its principal at once on receipt of the notes of the true financial condition of the debtor, and thus relieve itself of responsibility. This, as has been seen, the defendant did not do. It not only refrained from putting the principal in possession of the true facts of the case on the receipt of the notes, as it should have done, but it continued to withhold such information not merely until the notes had matured, but for a long period of time thereafter, and then replied only in response to plaintiff's telegram of inquiry. In this the defendant was derelict, under

section 4131 of the Revised Codes. It did not use ordinary care and diligence to keep the principal informed of its own acts respecting the subject-matter of the agency. The circumstances unmistakably point to the conclusion that the defendant was doing what it could do to befriend the debtor, and for this purpose it refrained from pressing these claims for payment, well knowing that, if the collection were pressed, a crisis might be precipitated which would not only operate disastrously as to Robinson, but might also jeopard the defendant's large claims against him. But the law steps in in such a case and establishes a standard of conduct different from that acted upon by the defendant in this case. The statute, voicing the better authorities, declares in terms that "an employee who has business to transact on his own account similar to that intrusted to him by his employer must always give the latter the preference." Measured by this true standard of business conduct, it was the defendant's bounden duty to either decline the trust in toto, or, if it was assumed, to discharge it faithfully in the light of the letter and spirit of the law governing the relation of principal and agent. Under the facts, it was a plain violation of the duty of an agent to surpress the vital information which it had, and, while keeping the principal in ignorance of the true state of Robinson's affairs, proceed to obtain from the debtor security for the payment of its own claims, and thereby preferring its own claims to those of its principal. The conduct of the defendant is clearly actionable. Whether damages were actually suffered by the principal is perhaps problematical. It is not possible to state with certainty whether the plaintiff, if it had received timely information of the facts within the knowledge of the defendant could have collected the notes. The court below found that the debtor was insolvent when the notes came into defendant's possession. This was doubtless the fact technically and in the sense that the defendant could not then meet his obligations promptly as they matured, but there is no evidence that Robinson's debts were in excess of the value of his property. During the whole period of the agency, and until the bank covered the debtor's property by its own mortgages, Robinson was making payments upon his indebtedness in small sums as he could, and at the same time he had an unincumbered stock of merchandise in his store at Fargo. But whether the notes could or would have been paid or secured, if the defendant had fully discharged its duties in the premises, will perhaps never be known It will suffice, for the purposes of this case, to state that the plaintiff's measure of damages is, prima facie, the amount of the two notes in question. Mechem, in his work on Agency, states the rule as follows: "The measure of damages in an action against an agent for negligence in collection is the actual loss sustained. The negligence being established, that loss, prima facie, is the amount of the claim; but the agent may show that, notwithstanding his negligence, the principal has suffered no loss, and the recovery can then be for nominal damages only." Daniel on

Negotiable Instruments states the rule thus: "The loss is, prima facie, the amount of the bill or note placed in its or his hands, but evidence is admissible to reduce it to a nominal sum." Daniel, Neg. Inst. § 329, and cases cited; Mechem, Ag. § 518, and cases cited. As has been seen, the evidence in this case has failed to overcome the prima facie damages established by the plaintiff. It necessarily follows from what has been said that the plaintiff should have judgment in this action, and the court below is therefore directed to reverse the judgment appealed from, and enter a judgment for plaintiff and against the defendant for the amount of the two notes described in the complaint, with interest as stated in the notes to the date of entering judgment, together with plaintiff's costs in both courts. It will be so ordered. All the judges concurring.