## BENNETT et al. v. AMERICAN NAT. BANK OF ENID.

No. 17449.   Opinion Filed Jan. 24, 1928.

Rehearing Denied March 13, 1928.

(Syllabus.)

1. **Banks and Banking—Collection Items Received Subject to Conditions Except Bank May not Contract Against Own Negligence.**

Parties delivering items to banks for im-

mediate credit, cash, or collection may contract with the bank as to the terms and conditions under which the bank may handle such matters, and all parties to such agreement are bound by the terms thereof; subject, however, to the well-recognized principle of law, as applied in this case, that the bank could not contract against its own negligence.

2. **Same—Diligence Required of Collecting Bank When Informed of Depressed Condition of Debtor Bank.**

If a collecting bank is in possession of facts indicating the depressed financial condition of a debtor bank, it is delinquent in its duty if it neglects to inform an interested customer of such vital condition and fails to take vigorous measures, under the circumstances, to secure payment of a check on such debtor placed with it for collection by such customer. And in this case it is held that it was reversible error for the trial court to refuse a special charge requested by the defendants covering this proposition suggested by the evidence, as the general charge of the court was not sufficient.

3. **Trial—Refusal of Requested Instructions Covered in General Charge.**

It is not error for the trial court to refuse to give a requested instruction where the court's general charge fully and properly covers the question raised by the special charge.

4. **Appeal and Error—Procedure for Preserving Error in Instructions.**

"In order to have instructions reviewed on appeal, it is necessary to except to each instruction complained of, and have the action of the trial court in giving each instruction and the exception thereto noted and signed by the trial judge, as provided by section 542, Comp. Stat. 1921." Whitehead v. Cook, 100 Okla. 282, 229 Pac. 254.

Commissioners' Opinion, Division No. 1.

Error from District Court, Garfield County; Charles Swindall, Judge.

Action by the American National Bank, a banking corporation of Enid, Okla., against James E. Bennett, Frank A. Miller, Frank J. Saibert, Frank T. Thompson, partners, doing business under the firm name and style of James E. Bennett & Company. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

Simons, McKnight, Simons & Smith and Morrison, Nugent, Wylder & Berger (P. C. Simons, E. R. Morrison, and H. L. Hassler, of counsel), for plaintiffs in error.

Dyer & Keim, for defendant in error.

REID, C. In order that the questions pre-

sented by this appeal may be fully understood, the material facts are here given in the order in which they occurred.

The defendants were engaged in the general brokerage and commission business with their principal office in the city of Chicago, Ill., where each of them lived. They maintained a branch office in Enid, Okla., in charge of one Livingston.

On August 20, 1924, defendants, by Livingston, presented to plaintiff a check for $650 drawn on the Bank of Ingersoll, of Ingersoll, Okla., by J. W. Proffitt, payable to defendants, and in exchange therefor plaintiff issued and delivered to Livingston its draft for the same amount payable to defendants. And on August 25th, a similar transaction occurred between the parties on Proffitt's check for $1,500. The drafts to the defendants were paid in due course. In each instance the plaintiff bank forwarded the Proffitt checks to its correspondent, the Tradesmen's National Bank, in Oklahoma City, for collection; and it in turn forwarded them direct to the Bank of Ingersoll. Proffitt, the maker of these checks, was doing other business with the defendants through their Chicago office, and, having a balance to his credit, drew a draft on them for $1,500, which was paid at that office on September 2nd. On September 5th, plaintiff received advice from the Tradesmen's National Bank, saying that it was without returns on the Proffitt checks. This information was immediately communicated to Livingston, who thereupon came to the bank, and after a conference held with the bank officers, a telegram was sent in the bank's name, at the expense of defendants, to the Ingersoll bank, asking whether the Proffitt checks had been paid as well as two other checks plaintiff had on that bank, and why payment on all such checks on that bank had been delayed. To this the Ingersoll Bank immediately answered "Yes," and this answer was shown to Livingston.

The Ingersoll Bank in payment of the Proffitt checks issued its drafts payable to the Tradesmen's National Bank on the First National Bank of Woodward, Okla., dated September 5th, though it appeared from the books of that bank that these drafts were in fact issued three or four days later than the dates. On September 12th, the plaintiff bank received advice from the Tradesmen's National Bank, that it had then received returns on the Proffitt checks. This information was on the same day given to Livingston and by mail to the Chicago office of the defendants. On September 15th, the Chicago office of the defendants paid a draft drawn on them by Proffitt for $1,200; however, in neither instance did the Chicago office communicate with plaintiff or Livingston before paying Proffitt's drafts. On September 16th, the Tradesmen's National Bank informed plaintiff by telephone that the drafts sent it by the Ingersoll Bank in payment of the Proffitt checks had been protested for the reason that payment had been refused by the First National Bank of Woodward, the payee. The evidence upon the trial discloses that the Ingersoll Bank then had an overdraft with the Woodward Bank of many thousand dollars which had been in that condition prior to and ever since the receipt by it of the Proffitt checks; though fluctuating in amounts.

Plaintiff bank gave the Chicago office of defendants by mail, and Livingston in person, the information it had received as to the protest of the drafts. And being also advised by its correspondent that its account had been charged back with the Proffitt checks, it likewise charged them to the defendants' account, and demanded payment, which was refused by the defendants.

The plaintiff, American National Bank of Enid, Okla., sued for the amount of the two Proffitt checks; attached and recovered judgment in a trial to a jury, and from an order overruling defendants' motion for new trial, they bring this appeal.

At the close of all the testimony the defendants requested the court to direct the jury to return a verdict in their favor, and they assign error on the denial of that request by the court.

To determine the sufficiency of the testimony, another material fact becomes necessary for consideration. On June 28, 1924, the plaintiff mailed to the local agent of the defendants, and also to their Chicago office, a letter, stating the terms upon which the plaintiff would handle items for customers, and the evidence of Livingston that the Proffitt checks were placed in the bank under the terms stated in the letter, when taken in connection with the fact that no objection was made by the defendants, nor their local agent, to the terms set out in the letter, constitutes an agreement between these parties as to how these items might be handled by the plaintiff.

Under the agreement, plaintiff accepted the checks as the agent of defendant, and plaintiff is not responsible for the negligence of the correspondent bank, if any occurred. And under the agreement the cor-

respondent bank had the right to send the checks direct to the payee and to accept in lieu of cash the drafts of the payee, and when these drafts were not paid, it had the authority to charge the same back to the plaintiff bank, and the plaintiff had the right to charge the amount to the defendants, and demand payment of the defendants. provided, that it had not been at fault in the failure to collect.

"Although a bank cannot relieve itself by contract from the consequences of its own negligence, it may thus relieve itself from the consequences of the negligence of others employed by it in making collections." 7 C. J. 620.

All parties thereto become bound by the conditions of the agreement under which plaintiff accepted these checks for collection, and that eliminated from this case what would have, otherwise, been several serious questions. But we are unable to say, especially in view of this agreement, that the court erred in refusing to direct a verdict for the defendants.

By the express terms of the agreement under which plaintiff accepted the Proffitt checks, it became the agent of the defendants, and it therefore owed to the defendants the legal obligations due by an agent to its principal.

The president of the plaintiff bank on cross-examination testified that in July, 1924, they had some checks on the Bank of Ingersoll that required eleven or twelve days to clear; that for a bank doing business on a proper banking basis this was away out of the ordinary, but was not out of the ordinary for some of these banks; that under ordinary circumstances a bank doing a legitimate banking business, a check clearing in the manner the Proffitt checks were cleared, the transaction should have been completed and the returns had on it within five or six days; that the ordinary way of handling the transaction would have been for the Bank of Ingersoll, on the same day that it received the checks, to issue its drafts payable to the Tradesmen's National Bank, and send them to that bank to take up the items. He further testified, in explanation of the expression in the telegram to the Ingersoll Bank, on September 5th, "Why delay in payment of all such checks on this bank?" by saying: "I think for at least 90 days we had been having a delay in collecting all such checks."

The foregoing testimony of an official of the bank, together with other evidence not not quite so material, clearly raised the question as to whether the plaintiff was not in possession of facts which amounted to knowledge that the Bank of Ingersoll was not in a satisfactory condition, and that it had been doing, with checks drawn on it just what this witness said was not proper banking and suggestive of financial difficulties.

With this situation presented by the evidence, the defendants requested the court to instruct the jury as follows:

"You are instructed that if you find and believe from the evidence that the plaintiff knew that the Bank of Ingersoll was in an unsound condition and had been delinquent in paying items drawn upon it, and if the plaintiff bank neglected to inform the defendants of this state of affairs and failed to take vigorous measures to secure payment of the checks in question, and if loss occurred to the defendants by the failure of the plaintiff to exercise that degree of care and diligence which the nature of this understanding called for with reference to the circumstances surrounding the undertaking, the plaintiff is liable to the defendants for any loss sustained by it in consequence of the failure of the plaintiff to use such care and diligence."

The court refused to give the instruction; defendants excepted and assign error.

In 3 R. C. L. 611, we find the principle governing the situation here presented is stated as follows:

"It has been said that there is a modification of the general rule, requiring only reasonable diligence and care, where the collecting bank knows of the depressed financial condition of the debtor; that a collecting bank knowing of the depressed financial condition of the debtor is delinquent in its duty if it neglects to inform its customers of such vital condition and fails to take vigorous measures, under the circumstances, to secure payment; for an agent is bound to exercise that degree of skill, care, and diligence which the nature of his undertaking calls for with reference to the time, place, and circumstances surrounding the undertaking."

Magee on Banks and Banking (2nd Ed.) sec. 273, states:

"The general rule is again stated that the bank in receiving a collection must use ordinary care and diligence toward its collection."

But the author then adds this qualification quite in point in this case:

"The diligence and care required depends largely upon the circumstances arising in each case."

The case of Pinkney v. Kanawha Valley

Bank, 68 W. Va. 254, 69 S. E. 1012, Ann. Cas. 1912B, 115, 32 L. R. A. (N. S.) 987, involved the question here presented. It appears from some of the testimony that the plaintiff who deposited the checks in the defendant bank for collection had no knowledge of the depressed financial conditions of the drawee bank, but that the defendant bank was in possession of facts amounting to notice of such conditions. In discussing the law applicable to this situation the court said:

"What do the law books say on this subject? Quoting from First Nat. Bank v. Fourth Nat. Bank, 77 N. Y. 320, 33 Am. Rep. 618, Clark & Skyles on the Law of Agency, sec. 402, at page 902, say: 'Suppose an agent receives for collection from the payee a sight draft. No circumstance can make it his duty, in order to charge the drawer, to present it for payment until the next day. He has entered into no contract with the drawer, is not employed or paid by him to render him any service, and owes him no duty to protect him from loss. What is required to be done to charge the drawer is simply a compliance with the condition attached to the draft, as if written therein; and that condition is in all cases complied with by presentation, demand and notice on the next day after receipt of the draft. But suppose the agent, on the day he receives the draft obtains reliable information that the drawee must fail the next day and that the draft will not be paid unless immediately presented; what then is the duty he owes his principal, whose interests for a compensation he has agreed with proper diligence and skill to serve in and about the collection of the draft? Clearly, all would say, to present the draft at once, and if he fails to do this, and loss ensues, he incurs responsibility to his principal, and yet the drawer would be charged if it was not presented until the next day.' This modification of the general rule requiring only reasonable diligence and care where the collecting bank knows of the depressed financial condition of the drawee or debtor is recognized and enforced in Commercial Bank v. Red River Valley Nat. Bank, 8 N. D. 389, 391, 79 N. W. 859. That court holds a collecting bank, knowing of the depressed financial condition of the debtor, is delinquent in its duty if it neglects to inform its customers of such vital condition and fails to take vigorous measures, under the circumstances, to secure payment. An agent is bound to exercise that degree of skill, care, and diligence which the nature of his undertaking calls for with reference to the time, place, and circumstances surrounding the undertaking. See note to Minneapolis Sash & Door Co. v. Metropolitan Bank, 77 Am. St. Rep. 613, 616. The same rule laid down by Clark and Skyles is, upon the same authority, affirmed in 1 Morse on

Banks & Banking, sec. 219. Indeed, this we perceive to be but the general law of agency. Under the circumstances of this case we think defendant was guilty of negligence in not either declining the agency to collect altogether, or taking such vigorous measures as the facts demanded for the protection of its customers."

We have examined the authorities cited in the foregoing opinion, and agree with that court that they fully sustain the conclusions there reached. And the foregoing case has been cited as supporting the text announcing the same doctrine in Morse on Banks and Banking (5th Ed.) sec. 219.

However, these cases, in principle, do not announce a new or strange doctrine, but simply apply the ordinary and old rule, everywhere found in the discussion of the duties owing by agents to their principals.

It was not sufficient for the court in this case to charge the jury, as it did, that if they found from the evidence that plaintiff handled the checks in the manner outlined in its letter and used ordinary care and diligence, it would not be guilty of negligence.

The evidence called for instructions defining the duty of the plaintiff to inform the defendants at the time it received the checks, and also the measure of care and diligence required of it in handling them, if the jury should find that the bank was at all these times in possession of facts which amounted to notice that the Bank of Ingersoll was in a depressed financial condition. And it was error for the court to refuse defendants' special charge presenting this question to the jury.

The defendants assign as error the refusal of the court to give another requested instruction. The general charge of the court covered the material proposition presented by this instruction, and in that particular was more favorable to the defendants than the requested charge, and therefore there was no error in refusing defendants' requested instruction.

The defendants also assign as error the giving of two separate paragraphs of the court's general charge. We are not at liberty to consider these assignments for the reason that no exceptions were taken by the defendants in the trial court.

"In order to have instructions reviewed on appeal, it is necessary to except to each instruction complained of and have the action of the trial court in giving each instruction and the exception thereto noted and signed by the trial judge, as provided

by section 542, Comp. Stat. 1921." White-head v. Cook, 100 Okla. 282, 229 Pac. 254.

We conclude that the trial court committed reversible error in refusing the special requested instruction heretofore discussed, as the same was strongly demanded by the evidence in this case. The cause should be reversed and remanded, and a new trial granted the defendants.

BENNETT, TEEHEE, LEACH, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.