AETNA INDEMNITY COMPANY v. LITTLE ROCK.

Opinion delivered January 18, 1909.

1. PRINCIPAL AND SURETY—ALTERATION.—A street car company was required by city ordinances to pave its track, and two feet on each side thereof, with whatever material the rest of the street was paved, and if it failed to do so then the city could pave the street and charge the cost thereof to the street car company, and a contract was let to pave the rest of a certain street with asphalt, the contract containing a provision that if the city, on failure of the street car company to comply with the ordinance, elected to pave the space required to be paved by the street car company, then the contractor should pave the same. *Held* that the contractor's surety could not complain because the city permitted the street car company to pave with brick, instead of asphalt, as such change did not go to the performance of the contract. (Page 100.)

2. MUNICIPAL CORPORATIONS—ULTRA VIRES CONTRACT—ESTOPPEL.—One who enters into an executed contract with a municipal corporation and has received the benefit thereof cannot object that it was not authorized to enter into such a contract. (Page 100.)

3. EVIDENCE—COMPETENCY.—Where the contract for paving of a street with asphalt provided that the asphalt should not be laid at a less temperature than 250 degrees Fahrenheit, evidence which tended to show that the city permitted the asphalt to be laid at a lower temperature than 300 degrees Fahrenheit was properly excluded. (Page 101.)

4. ACTIONS—DISMISSAL.—Where the plaintiff requested the court to direct a verdict against one only of two defendants, this was equivalent to a dismissal as to the other defendant. (Page 103.)

5. REMOVAL OF CAUSES—TIME OF APPLICATION.—Where plaintiff dismissed his cause of action as to several resident defendants, leaving a removable cause of action against a nonresident defendant, his right to remove must be asserted as soon as it assumes a removable shape, and cannot be asserted if he waits until after judgment is rendered against him. (Page 103.)

Appeal from Pulaski Circuit Court, First Division; *Robert J. Lea,* Judge; affirmed.

### STATEMENT BY THE COURT.

The Board of Public Affairs of the city of Little Rock let a contract for the paving of West Markham Street. The Arkansas Asphalt Company was the successful bidder, and entered into a contract to construct an asphaltum pavement on the designated portion of West Markham Street, and to maintain the same in good order and condition for a period of ten years. The Arkansas Asphalt Company assigned its contract to the Green River Asphalt Company.

The contractor was required to give two bonds, one for $10,000 for the proper construction of the pavement and to indemnify the city against all claims for labor and material; and the other one for $5,000 for the maintenance of the pavement for ten years. This bond was as follows:

"Whereas, the Arkansas Asphalt Company has entered into a contract with the Board of Public Affairs of the city of Little Rock, acting for said city, for the grading, paving and other work incidental thereto, of West Markham Street, from the east line of Louisiana Street to the west line of Cross Street, in said city, bearing date of the third day of September, 1902; and

"Whereas, the city has required a bond guarantying the said pavement for a term of ten years;

"Now, therefore, the condition of this obligation is such that if the said Arkansas Asphalt Company or the Green River Asphalt Company constructs a good, serviceable and substantial pavement under said contract, and keeps and maintains said pavement in first class and good condition and repair for and during a term of ten (10) years from the date of the acceptance of said pavement by said city, then this obligation shall be null and void; but otherwise it shall remain in full force and effect."

There was a double track of street railway down the middle of Markham Street, and the street car company was, under an ordinance, obligated to pave between its tracks and for two feet on each side of them with the same kind of pavement with which the rest of the street was paved; and if it should fail to do so then the city could pave said part of the street and charge the cost thereof to the street car company.

The contract contained a provision that if the city, on failure of the street car company to comply with the ordinance, elected to pave the space required to be paved by the street car company, then the contractor (The Arkansas Asphalt Company) should pave said space under the conditions, terms and specifications provided in the contract for the paving of the other parts of the street. Subsequent to this contract, the city and the street car company agreed that said space might be paved with brick, and it was paved with brick under a contract between the city and a third party. Neither the Asphalt Company, nor the sureties on its bonds, consented to the change agreed upon between the city and the street car company.

Testimony was adduced tending to prove that the city did not take proper care of the street, in that it permitted mud, water and manure to accumulate upon it.

It was proved, and undisputed, that after about two years' use the street fell into bad condition, and that the city called upon the contractor and its sureties to maintain and repair it, and upon their failure to do so proceeded to make necessary repairs, and in doing so expended about $5,300. At the close of the testimony, the court directed a verdict for the plaintiff

against the surety company for the full amount of the bond sued upon, $5,000; and the surety company appeals.

*Bradshaw, Rhoton & Helm,* for appellant.

1.   The original contract, that of September 3, 1902, called for an all asphalt street.   The maintenance bond sued on was given to cover that contract, and was conditioned for the construction of a good, serviceable, substantial pavement *under said contract.*   When the city, by its ordinance afterwards passed, gave permission to the Little Rock Traction & Electric Company to pave between its tracks and for two feet on each side thereof with brick, this was a change in the contract which, not having been agreed to by the surety, discharged it from liability.  6 Cyc. 83; 2 Brandt, Suretyship, § 278; Stearns, Suretyship, § § 72, 73; 65 Ark. 552; 6 Current Law, 1595, n. 66; 66 Ark. 287; 71 Ark. 199; 79 Ark. 523; 73 Ark. 473; 82 Ark. 594; 96 Mo. App. 467; 42 Ore. 386; Fed. Cas. No. 14871; 53 Kan. 358; 125 Mo. 72. The surety is not liable because the bond was executed under the representation on the part of the city that the street car company would be required to pave a certain portion of the street with like material, the contract reciting an ordinance to that effect. When it changed this representation by changing its law in that respect, the transaction amounts to obtaining the bond under misrepresentation, and is a fraud upon appellant, releasing it from liability.   5 Cyc. 817.

2.   The bond is void because the city had no authority to make the contract.   Kirby's Digest, § 5456; 98 Cal. 12; 32 Pac. 702; 130 Cal. 226; Kirby's Digest, § § 5643, 5644; 33 Ore. 307; 92 Wis. 456; 9 Wash. 273; 56 Hun, 81; 99 Ky. 380; 131 Mo. 26.

3.   Appellant should have been permitted to introduce proof to show at what degree of heat the asphalt was laid.   If the stipulations of the contract were not complied with in that respect, appellant was entitled to a peremptory instruction.

4.   The question of the city's negligence in failing to keep the street free from dirt, mud, gravel and other deleterious substances ought to have been submitted to the jury.

5.   The cause should have been removed to the Federal court, pursuant to the petition and bond filed for that purpose. Where a plaintiff joins resident defendants with nonresident

defendants in an action, and, after the statutory time for removal has expired, dismisses as to the resident defendants, he is estopped to set up the expiration of the time for removal. 2 Rose's Code, § 1136 (L.); 169 U. S. 928; 65 Fed. 138; 70 Fed. 277. The petition was filed within the time allowed for filing a motion for new trial. It was not too late. 2 Rose's Code, § 1136 (J.); 33 Fed. 84; 53 Fed. 307; 81 Fed. 417; 83 Fed. 853; 45 Fed. 802; 37 Fed. 545.

*W. B. Brooks,* City Attorney; *J. C. Marshall* and *J. H. Carmichael,* for appellee.

It was the duty of the street car company under its franchise to pave between its tracks and for two feet on either side thereof at such time as the other portions should be paved. The contract therefore did not contemplate the paving of the street in its entire width by the asphalt company or its assignee, except upon the contingency of refusal by the street car company to comply with its contract. That contingency never arose, and there was never any change in the contract so far as the asphalt company was concerned. The contract was substantially complied with, as appears from the evidence and the fact of acceptance of the pavement and payment of the balance at the solicitation of counsel. 34 Ark. 197. There was no misrepresentation. The bond sued on did not become operative until acceptance of the pavement, and this was done at request of one who, although he claims to have acted for the Green River Asphalt Company, was also agent for the appellant, and had full knowledge of the facts. The agent's knowledge in this case estops the principal 52 Ark. 11; 29 Ark. 99.

2. The city had authority to make the contract. Kirby's Digest, § 5436; 1 Dillon, Mun. Corp., 4 Ed. § 89; Elliott on Roads & Streets, (2d Ed.), § § 532, 533; 54 Am. St. Rep. 695; 34 Neb. 220; 41 Neb. 655; 54 Mich. 345; 147 Mo. 467; 48 L. R. A. 285; 104 Ia. 160; 107 Ia. 90; 66 Hun, 179; 137 Mo. 540. The undertaking of the contractor and appellant as guarantor was absolute. The consideration demanded by it was paid, and such part thereof as was paid it by the contractor was repaid to him by the city. 89 Ala. 362. See, also, 44 L. R. A. 527.

3. There was no sufficient evidence to justify submitting

to the jury the question of the city's negligence in failing to keep the street clean. Moreover, a city is under no legal duty or obligation to clean its streets.

4. After the case had gone to trial, verdict and judgment rendered, it was then too late to move a transfer into the Federal court. The application must be made before trial in the State court. 175 U. S. 635; 60 L. R. A. 949; 169 U. S. 92; 65 Fed. 129.

HILL, C. J., (after stating the facts). I. It is said that the sureties were relieved by the change of the pavement required of the street car company. It was understood from an existing ordinance, and by a descriptive clause in the contract, that the space occupied by the street car company, and two feet on each side thereof, was to be paved with whatever material the rest of the street was paved—in this instance, asphalt. This contract provides that in a certain contingency mentioned therein the contractor could be required to pave this space with asphalt under similar terms and conditions and specifications as the work contracted for. This, however, was at the option of the city. Unless the city exercised that option and required it to pave this space, the contractor had no concern with this space. It was not a matter affecting the performance of his contract, and its only relation to the work done was its immediate proximity to it. The city could change its mind about how this should be paved, without touching his contract in the least. That is what it did, and neither the contractor nor the surety has cause to complain of a change not going to the performance of the contract. *National Surety Company* v. *Long*, 79 Ark. 523.

II. It is argued that the bond is void because the city had no authority to take a bond for this purpose. Appellant refers to several decisions from which it may be seen that there is some difficulty in sustaining bonds where there is no direct statutory authority for them. It is not important to consider them here, because, if it be conceded that it was an *ultra vires* act on the part of the city, the surety company is estopped from availing itself of it now. The contract is an executed one, the surety has received its consideration for it, and the benefit of the act has been reaped by the principal of the surety company and the surety company itself, and it is too late to avoid the penalty. *Minn.*

*F. & M. Mut. Ins. Co.* v. *Norman*, 74 Ark. 190; *Forrest City* v. *Orgill*, 87 Ark. 389.

III. It is next insisted that the court erred in refusing to permit the defendant to prove the degree of heat in which the asphalt was laid. The contract called for the asphalt to be heated to 300 degrees Fahrenheit, and to be laid at a temperature of not less than 250 degrees Fahrenheit. If the contract was not complied with in the construction of the pavement, then there would be an action on the construction bond, and not on the maintenance bond, unless the city was responsible for the departure from the contract or waived its terms. Taking the terms of the contract and the maintenance bond together, it is clear that the pavement was to be built according to plans and specifications of the contract before the maintenance bond was brought into action, so to speak. The language seems plain enough, and it is unreasonable to suppose that business men would contract to guaranty a pavement for ten years unless that pavement was built in an approved manner upon proper plans and specifications. If, therefore, the defendant had offered to show that there was a material departure from the plans and specifications of the contract with the city, then unquestionably the surety should be released, notwithstanding the city's acceptance of the pavement, for it would not be the pavement it contracted to guaranty and maintain. But there is no such evidence here, nor the offer of such evidence.

Woodson, the president of the Arkansas Asphalt Company, was asked if he remembered the degree of heat of the asphalt in laying it, and an objection was interposed on the ground that the question of construction had not been gone into, and the objection was sustained.

Reichardt, a civil engineer who was employed by the city, and who assisted Howard, an expert in asphalt whom the city put in supervision of the work, was called as a witness for the defendant, and was asked: "Was any of the asphalt that was laid on that street under the direction of Maj. Howard laid at a less temperature than 300 degrees Fahrenheit?" This was objected to, on the ground that the work was accepted, and the objection was sustained. The question to Reichart did not go to the real question—laying the asphalt at not less than 250 degrees.

The appellant says: "The defendant offered to prove that instead of laying the asphalt at 250 degrees, as required by the contract, that it was laid at 150 degrees by the direction of Mr. J. W. Howard, who was working under the city engineer as an expert and as a special representative of the city." The record fails to sustain this statement. All that is found therein on the subject is given above, and the abstract points out no other testimony, adduced or offered, to sustain this contention.

This court only reverses for prejudicial error, and it must be shown affirmatively that error occurred in the trial. It is not shown that any competent testimony was rejected. *Meisenheimer* v. *State,* 73 Ark. 407; *Boland* v. *Stanley,* 88 Ark. 562.

IV. The next point made is that the court erred in refusing to submit to the jury evidence tending to prove the city's failure to keep the street free from dirt, mud, gravel and other deleterious substances which impaired the wearing of the pavement. The court was right in this. The city did not contract to perform this work. On the other hand, the contractor and its surety contracted to maintain the street. Had terms been inserted in the contract requiring the city to properly care for the street, then this would have been an issuable matter; otherwise it was not.

V. Lastly, it is insisted that the case should have been transferred to the Federal court. The facts in this regard are: The suit was brought by the city of Little Rock against Woodson, Price, Arkansas Asphalt Company, and Aetna Indemnity Company. On the 30th of October the plaintiff dismissed as to Woodson and Price, and on the 31st of October, at the conclusion of the evidence, the plaintiff asked that a verdict be directed against the Aetna Indemnity Company, which was done, and the verdict against it alone was rendered on that date.

On November 9th a petition and bond for removal was filed by the Aetna Indemnity Company, and also a motion for new trial, for the filing of which leave was given. The petition for removal was denied on the ground that it was not presented until nine days after the judgment was rendered, and no prior notice given that it would be filed.

The action of the plaintiff in asking a peremptory instruction to find against the Aetna Indemnity Company alone was tantamount to a dismissal of the other defendant. This was followed by a formal dismissal as to the Asphalt Company. Both events are recorded in the same entry. The moment that the other defendant went out of the case, leaving it solely between corporations of different States, the other elements being present, the defendant had a right to remove it to the Federal court. But the right to remove must be at once asserted as soon as a case, not theretofore removable, assumes a removable shape. Moon on Removal of Causes, § 157; *Powers* v. *C. & O. Ry. Co.,* 169 U. S. 92.

Here the defendant waited until nine days after judgment. There was then no case to remove; there was only a judgment to review. Finding no prejudicial error, the judgment is affirmed.