## HINTON v. STANTON.

### Opinion delivered March 23, 1914.

1. CONTRACTOR'S BOND—BUILDING CONTRACT— CHANGE IN PLANS.—It is contemplated in all building contracts that small and immaterial changes will be suggested, and will become necessary in the progress of the construction of the building, and this fact is necessarily known to one who becomes surety upon a contractor's bond, and if the changes made are slight and immaterial, the surety is not released. (Page 211.)

2. BUILDING CONTRACT—CHANGES—WAIVER—CONTRACTOR'S BOND.—The provisions in a building contract, that the architect should order changes to be made in writing, is made for the benefit of the contractor, as well as the owner, and can be waived by the contractor, without releasing the surety on the contractor's bond. (Page 211.)

3. BUILDING CONTRACT—MATERIAL CHANGES.—It is error to charge the jury as a matter of law, that a change in a building contract involving an additional cost of $158 is an immaterial change. (Page 212.)

4. CONTRACTOR'S BOND—MATERIAL CHANGE.—The contractor's bond to build a house would not be rendered void because of some change or addition thereto, unless the addition involved some material change in the contract for the construction of the house. (Page 212.)

5. CONTRACTOR'S BOND—MATERIAL CHANGE—RULE.—The test for determining whether a material change has been made in a building contract, or an additional contract entered into, is, could the owner have made a separate contract for the additional work, and could that contract have been performed without materially changing the contract which the contractor had already made, and upon which the surety was bound? If this could be done, then the contract for the extra work is an additional contract, and not a change in the original contract. (Page 213.)

Appeal from Sebastian Circuit Court, Fort Smith District; *Daniel Hon,* Judge; reversed.

Appellant was the plaintiff below, and alleged in her complaint that she entered into a contract with G. W. Norris, a contractor, on the 8th day of January, 1912, whereby he agreed to build her a residence. It was alleged that appellee became surety for Norris upon the bond given by him for the performance of his contract. That under the terms of this contract Norris agreed to build the house for the sum of $3,165. Of this sum, $193 was for extra work, which was later agreed to by the parties, and which changes were duly ordered in writing by the architect. The original contract price was $2,972, and there was paid Norris the sum of $1,950, after receipt of which sum he abandoned the contract and plaintiff was compelled to re-let the contract and to have said building finished by other contractors. That, according to the certificate of the architect, the plaintiff, by reason of the default of Norris, in the performance of his contract, was required to pay the sum of $1,591.63 in excess of the $3,165. The appellee, who was the defendant below, acknowledged his engagement as surety on the contractor's bond, but defended upon the ground that he was released by the act of the principal in making certain changes in the contract without his consent. He contends that in making those changes the principal set up a new contract and abrogated the one upon which he was surety.

Appellant acknowledges making the changes complained of, but pleads the consent of the surety by virtue of certain terms of the contract, contending that the changes made were consented to in advance by the surety, and appellant further contends that the changes made were not of such material character as would release a surety. The bond expressly provided "that no alterations made in said work upon the written order of the architect in the nature of the work to be done under said

contract * * * shall in any way release the said sureties or either of them."

The original plans drawn by the architect provided for a *porte cochere,* but the plans had been changed to leave it off, and it was not in the contract made by Norris. The changes which were made, together with the charges or credits therefor, are as follows: The *porte cochere* at an additional cost of $158.50, bed room door, no charge, cellar door frame $3, an extra door $10, rear dormer window $30, rear windows, credit $8.50, basement window $1.50, frame and girder on first floor $8.50, front stairway $25, back closet $8, basement door $3, extra flashing $10, front porch $8, window over *porte cochere* $2.

In the plans a small dormer about two by three feet was described in the rear of the building. When it was framed it displeased appellant, and she changed the arrangement so as to call for three large windows in the dormer, requiring the small one to be removed, and the large one to be placed in, building a dormer about ten by twelve feet, and this is the change in the rear dormer, which as stated cost $30. The item of $25 for a stairway consisted in adding an additional landing, and it is said that this change was agreed upon between the appellant and the contractor without consulting the architect. There was evidence tending to show that some of the above items were made necessary by the errors of the contractor, and it is undisputed that this is true of the item for flashing.

All of the changes which were made were approved by the architect and were covered by additional specifications in writing prepared by him and signed by the contractor, but it is said that this writing was prepared and signed after the changes had in fact been made.

*Read & McDonough,* for appellant.

1. No additions or alterations were made in such manner as to change the original contract and release the bond. 65 Ark. 550; 66 *Id.* 287; 69 *Id.* 126; 71 *Id.* 199;

86 *Id.* 212; 104 *Id.* 49; 46 N. W. 1018, 52 *Id.* 165; 30 Neb. 657; 46 Atl. 416; 108 Wis. 396; 87 Fed. 687; 54 N. E. 136; 92 Fed. 299; 186 U. S. 309; 34 S. W. 933; 179 Mo. 620; 90 Pac. 328; 64 N. E. 558; 111 S. W. 686; *Ib.* 641; 89 Ark. 95; 118 S. W. 967; 126 *Id.* 768; 126 Pac. 470; 85 *Id.* 334; 72 N. E. 575; 46 Pac. 402.

2. The provision that the architect should order the changes in writing does not release the surety, even if not complied with. 98 S. W. 387; 42 N. E. 669; 72 N. E. 574; 72 Pac. 1032; 115 Fed. 697; 52 C. C. A. 419; 148 N. Y. 241; 86 N. W. 859; 73 Pac. 775.

3. The surety consented in advance to the changes, which were immaterial. 85 Pac. 333; 52 N. W. 167; 86 *Id.* 859; 32 N. Y. Sup. Ct. 25.

4. The question of materiality of the alterations is one of law. 7 Me. App. 283; 46 Pac. 402.

*G. C. Hardin* and *A. A. McDonald,* for appellee.

1. The making of any material change in a builder's contract without the consent of the sureties sets up a new contract and releases the sureties. 65 Ark. 550; 66 *Id.* 287; 69 *Id.* 126; 71 *Id.* 199; 86 *Id.* 212; 104 *Id.* 49; 92 Fed. 306; 6 Law T. (U. S.) 620.

2. The written order of the architect was a condition precedent to making any changes without the consent of the surety. 71 Ark. 199; 92 Fed. 299; 66 Ark. 287.

3. The surety was not a party to the contract for a *porte cochere.* This was a material change. Cases *supra.*

4. None of the changes were consented to by the surety. 92 Fed. 299.

SMITH, J., (after stating the facts). The instructions to the jury assumed that material changes had been made and practically directed a verdict for the defendant, unless the jury found the fact to be that appellee had consented to the changes which were made. For instance instruction No. 2, given on the motion of appellant, read as follows: "If you find from the evidence that the plaintiff and the contractor, G. W. Norris, changed the plan and added the *porte cochere* after W.

A. Stanton signed the bond, which made a difference of $158.50 in the cost of the house, then the court tells you that would be a different contract from the one signed by the defendant, W. A. Stanton, and your verdict should be for the defendant, unless you further find that said Stanton consented to the change.'' The building in controversy was an elegant home, with all modern conveniences, and, in view of its size and cost, we think the court should have told the jury, as a matter of law, that all of the changes except that of the *porte cochere* were immaterial. It is contemplated in all building contracts that small and immaterial changes will be suggested, and will become necessary in the progress of the construction of a building, and this fact is necessarily known to one who becomes surety upon a contractor's bond, and if the changes made are slight and immaterial, the surety is not released. *Dorsey* v. *McGee,* 46 N. W. 1018; *Cook* v. *White School Dist.,* 111 S. W. 686; *Nowell* v. *Mode,* 111 S. W. 641; *Hohn* v. *Shideler,* 72 N. E. 575. The converse of this proposition was stated in the case of *O'Neal* v. *Kelly,* 65 Ark. 550, where it was held that any material alteration in the contract for the performance of which a surety is bound, without his consent, discharges the surety, and that this is so even if the alteration be for the benefit of the surety; for, ''although the principals may change their contract to suit their pleasure or convenience, they can not thus bind the surety.'' To the same effect are the cases of *Miller-Jones Furniture Co.* v. *Fort Smith Ice & Cold Storage Co.,* 66 Ark. 287; *Erfurth* v. *Stevenson,* 71 Ark. 199; *Eureka Stone Co.* v. *First Christian Church,* 86 Ark. 212. Appellee insists as a reason which renders the bond void that some of these changes were made without consulting the architect and that other changes were ordered and made before written directions therefor had been given by the architect. If this contention is true, it shows that all parties regarded the changes in the interior of the building as unimportant and immaterial, for such was the fact, and no question in regard to these changes should have been sub-

mitted to the jury. Minor changes could have been made whether ordered in writing or not, as the provision that the architect should order in writing the changes to be made was for the benefit of the contractor, as well as the owner, and could be waived by the contractor, and was waived by him. *American Surety Co.* v. *San Antonio Loan & Trust Co.,* 98 S. W. 387; *Hohn* v. *Shideler,* 72 N. E. 574; *Cowles* v. *U. S. Fidelity & Guaranty Co.,* 72 Pac. 1032; *Smith* v. *Molleson,* 42 N. E. 669.

But it is not necessarily the case that the *porte cochere* did not involve a material change in the builder's contract. It was originally embraced in the plans, and was then stricken out, and after the contract had been let, was reinserted. Its cost is too great for the court to say as a matter of law that it was an immaterial change. It would be more nearly correct to say as a matter of law that it was a material change provided it was a change at all. But did it involve a change in the contract for the construction of the building or was it a mere addition to the building? We think that question should have been submitted to the jury. The contractor's bond to build a house would not be rendered void because he agreed to build something else, or some addition to the house, unless the addition involved some material change in the contract for the construction of the house. The *porte cochere* was not a part of the plan covered by the bond, and no liability could have arisen against the surety out of its construction. However, if its construction involved some change in the building contract, which a jury should find to be of a material nature, such change would invalidate the bond, unless the consent of the surety was secured. But if the *porte cochere* could be and was attached to the building without involving any material change in the plan of the building, then the fact that it was constructed would not render the bond invalid; and, under the circumstances of this case, the test of materiality of the change is this: Could the owner have made a separate contract for the *porte cochere* and could that contract have been per-

formed without materially changing the contract which
Norris had made, and upon which appellee was surety?
If this could have been done, then the contract for the
*porte cochere* is an additional contract and not a change
in the original contract.

The views which we have expressed render it unnec-
essary to pass upon the various instructions which were
given or refused, as upon its remand the cause will be
submitted to the jury upon the question whether the con-
struction of the *porte cochere* involved a material change
in the contract upon which appellee was surety, and, if
so, did the surety consent to the change in the contract?