## O'NEIL ENGINEERING CO. et al. v. CITY OF LEHIGH.

No. 6454—Opinion Filed May 13, 1919.

Rehearing Denied July 22, 1919.

(Syllabus by the Court.)

### 1. New Trial—When Granted.

A court of general jurisdiction has the power to set aside the verdict of a jury and grant a new trial any time during the term at which the verdict was received upon proper showing.

### 2. Appeal and Error—New Trial—Discretion of Court.

The granting of a new trial is largely within the sound discretion of the trial court, and the action of the trial court in granting a new trial will not be disturbed by this court unless it clearly appears that this discretion was abused.

### 3. Appeal and Error—Review—Scope of New Trials.

Error of the trial court in setting aside the verdict of a jury and granting a new trial, where the court has jurisdiction so to do, unless appealed from or otherwise reviewed according to the forms of law, becomes final, and such error cannot be availed of by the litigant prejudicially affected in a subsequent trial of the same cause.

### 4. Principal and Surety—Bonds—Change of Provisions—Effect.

When S. signs a surety bond reciting, "Whereas, said principal has entered into a certain written contract with the obligee by the terms of which said principal agrees to prepare and furnish complete plans and specifications, and to provide competent superintendence for the construction and erection of a system of waterworks and electric light plant, and said principal further guarantees that the total cost of the construction, erection and completion of said system and plant will not exceed $49,000," held, that a change in the contract by the substitution of the old pole line of a then existing electric light plant in lieu of the erection of the pole line mentioned in the contract was an immaterial change, and did not result in releasing S. from liability on the bond, when it did not appear that the cost of the old line was greater than the pole line mentioned in the contract.

### 5. Appeal and Error—Harmless Error.

If, after an examination of the entire record, it does not appear that the improper admission or rejection of evidence, or the mis-

direction of the jury, had probably resulted in a miscarriage of justice, or a denial of the substantial rights of the litigants, the judgment of the trial court will not be reversed on appeal.

Error from District Court, Atoka County; Robt. M. Rainey, Judge.

Action by the City of Lehigh against the O'Neil Engineering Company and the Southern Surety Company. From judgment for plaintiff, the defendants bring error. Affirmed.

J. G. Ralls, for plaintiffs in error.

George Trice, for defendant in error.

PITCHFORD, J. This action was commenced in the district court of Atoka county, Okla., on the 23d day of April, 1910, by the city of Lehigh, hereinafter designated as plaintiff, against the O'Neil Engineering Company and the Southern Surety Company, hereinafter designated as defendants. It is claimed by the plaintiff that on the 25th day of July, A. D. 1908, the defendant O'Neil Engineering Company entered into a certain contract with the plaintiff for the preparation of plans and specifications and construction of a system of waterworks and an electric light plant for the said town; that by the terms of said contract the defendant O'Neil Engineering Company obligated itself to prepare and furnish complete plans and specifications for the construction and equipment of a waterworks system and an electric light plant for the town of Lehigh, and to submit an estimate of the cost of said waterworks system and electric light plant, and to make such changes as should be desired by the plaintiff, and to guarantee said estimate by a good and sufficient surety bond. The defendant O'Neil Engineering Company was to employ all labor, collect all material necessary for the construction of the said waterworks system and electric light plant, and to furnish competent superintendence for the construction of the same. As a consideration for said contract, the town of Lehigh agreed to pay the defendant O'Neil Engineering Company for its services 10 per cent. of the entire cost of material, labor, machinery, and all other things going into the cost of the construction of said work; that under said contract the defendant O'Neil Enginering Company prepared the plans and specifications for the construction of said waterworks system and electric light plant, and also furnished to the city an estimate of the cost of the same; that said estimate estimated the cost of construction of the said waterworks system and electric light plant at the gross sum of $49,000.

On the 25th day of August, 1909, the defendant O'Neil Engineering Company and the defendant Southern Surety Company made and executed a certain contract bond for the faithful performance of all the terms of the above-mentoned contract, and further guaranteeing that the total cost of the construction, erection, and completion of said waterworks system and electric light plant should not exceed the sum of $49,000.

It is charged that the defendant O'Neil Engineering Company failed to keep and perform its said contract, and failed to keep and perform the conditions of the bond above mentioned; that it failed to furnish and install certain items therein mentioned of the total value of $238.50, and that it further defaulted in its contract and bond, in that it did not construct, erect, and complete said waterworks system and electric light plant at a cost of not less than $49,000; that, in addition to the failure to furnish the items above mentioned, the plaintiff had been compelled to spend the sum of $53,057.13, making an excess over the guaranteed estimate of the sum of $4,295.71, for which sum the plaintiff asked judgment.

The defendant O'Neil Engineering Company denied the right of the plaintiff to recover, for the reason, as charged by the defendant, that the contract had been changed so that there should be constructed a waterworks system, but not any electric light system; and charged that the contract had been abandoned as to the electric light system, except as to engine and generator, and that the defendant was released from its obligation to superintend and supervise and furnish labor for the construction of an electric light plant, except as to said engine and generator; and charged that the plaintiff purchased an electric light system already standing and constructed and in existence in lieu of the electric light system designated and contemplated in the original contract, and that in purchasing the same paid therefor the sum of $8.750; and charged that the electric light system was estimated in defendant's plans, specifications, contracts, and bonds, not including engine and generator, at $4,479 for construction, and that the purchase of said plant was in lieu of constructing such a system; that there was not any agreement made between the parties thereafter as to the electric light plant, and that thereby, so far as the contract for the specifications and construction of the electric light system was concerned, said contract was abrogated, and claimed that the changes in the contract released the bond sued upon, and demanded judgment against the plaintiff in the sum of $1,020, for commissions remaining unpaid.

The answer filed by the Southern Surety

Company was practically the same as that filed by its codefendant. On the 12th day of November, 1910, the case was tried and a verdict returned in favor of the city of Lehigh against the O'Neil Engineering Company for the sum of $1,000 and in favor of the Southern Surety Company, whereupon it appears a new trial was granted as to the O'Neil Engineering Company without protest. On the 17th day of November, 1910, the plaintiff filed a motion for a new trial as to the Southern Surety Company. On the 23d day of January, 1911, the Southern Surety Company moved to strike the motion for a new trial from the files, for the reason it was not filed in time. On the 5th day of January, 1912, the motion to strike the motion for a new trial was overruled, and new trial granted as to the Southern Surety Company, to which the surety company duly excepted. On the 7th and 8th days of July, 1913, the cause was again tried before a jury, and a verdict was returned in favor of the plaintiff and against both the defendant in the sum of $4,295.71. The defendants appeal.

The assignments of error are numerous, reaching to the number of 46. As we view the questions involved, we deem it unnecessary to consider the assignments of error in the order they are presented, but will content ourselves with three propositions, to which all of the assignments are directed, either directly or indirectly:

"First. Did the court err in granting a new trial as to the defendant Southern Surety Company; the motion for a new trial not being filed in time?

"Second. Was there a material change in the contract?

"Third. Did the court commit error in the instructions given, or refusing to give instructions asked for by the defendants?"

We will consider these points in the order named.

Did the court err in granting a new trial as to the defendant Southern Surety Company? We have seen that the verdict was returned on the 12th day of November, 1910, and that the motion for a new trial was not filed by the plaintiff until the 17th day of November. Under section 5267, Rev. Laws 1910, the district court shall have power to vacate or modify its own judgments or orders at, or after, the term at which such judgment order was made.

First. By granting a new trial for the cause, within the time, and in the manner prescribed in section 5035. Section 5035 provides that the application for a new trial must be made at the term the verdict, report, or decision is rendered, and, except for

the cause of newly discovered evidence, material for the party applying, which he could not with reasonable diligence have discovered and produced at the trial or impossibility of making a case-made, within three days after the verdict or decision was rendered, unless unavoidably prevented. The attorney for the plaintiff filed a statement of facts explaining why the motion for a new trial was not filed within three days, and upon hearing the new trial was granted. The granting of new trials is largely within the discretion of the trial court, and, unless it is clear the trial court in making the order erred upon a pure and unmixed question of law, the judgment granting a new trial ought to be affirmed. Adams v. King, 68 Oklahoma, 170 Pac. 912; Badger Lbr. Co. v. Rhoades, 26 Okla. 261, 109 Pac. 302; McBride v. O. K. Houck Piano Co., 66 Oklahoma, 169 Pac. 889. Here a question arises. Is the defendant surety company in a position to insist upon error of the court in granting the new trial? While it is true exceptions were taken to the action of the court at the time, there the surety company stopped; no further steps were taken. In Underwood v. Sledge, 27 Ark. 295, it was held that a court has control over its orders and judgments during the term in which they are made, and for sufficient cause may modify or set them aside; that it was good policy in the law to allow courts an hour's reflection, time to revise hasty action, correct mistakes, and review such error as they may have fallen into for want of sufficient consideration, and to this end, they have, during their respective terms, to make up their records and fully consider the propriety of their judgments, and to review and correct any mistakes, errors, or indiscretions into which they may have fallen during the terms, and when such revision is had the action of the court and the record stand precisely as if no such former mistake or erroneous judgment had ever been given or entered. It was further held that if during the term the court, for sufficient cause, or even without cause, sees fit to set aside such judgment, its benefits are lost to him in whose favor it was rendered. This question has probably been as exhaustively and as ably treated by our own court as by any in the United States. In the case of Todd v. Orr et al., 44 Okla. 459, 145 Pac. 393, Sharp, C. (afterwards Chief Justice), uses the following language:

"The power of a court of record, during the term at which rendered, to control its orders, judgments, and decrees made during the term is of far-reaching importance. That such authority should be possessed by trial courts of general jurisdiction must be conceded. Any other view would so fetter and paralyze the power of the courts that they

must frequently do wrong, from mere inability to do right. We do not believe it was the intention of the Legislature either to destroy or impair the exercise of such authority, nor does the language of the statute so indicate. As we have seen, from the early days of the common law, the right has been recognized. It is a necessary and inherent power pertaining to the courts in the administration of justice that the very end and object of their institution may not be defeated. The rule laid down by the court in Long v. Board of County Commissioners, 5 Okla. 128 [47 Pac. 1063], being against both sound reason and the great weight of authority, should be and is expressly overruled. The extraordinary power thus recognized to exist should be exercised sparingly, and, we may add, upon due notice to the parties, or at the time when the verdict is rendered. This, that the losing litigant may have time and opportunity to except, and, if desirous, appeal from the court's action.

"The court having the inherent right to vacate the judgment (though its action was subject to review on appeal), and its order having been acquiesced in without form of objection, it is final, for it is a principle needing no citation of authorities in its support that, where a court has jurisdiction, it has a right to decide every question which occurs in the cause; and whether its decision be correct or otherwise, its judgment, until reversed, is regarded as binding. * * * That the court erred or gave an erroneous reason for its conclusion is immaterial. Having exercised its power, however prompted, the effect was to vacate and set aside the judgment. No appeal having been prosecuted from this order, it has become final."

Second. Was the contract changed after the execution of the surety bond? The defendants contend that the construction of the electric light plant was eliminated from the contract, and that practically all that was left for the defendant engineering company to superintend was the system of waterworks; that the contract had been changed by the city purchasing the electric light plant already installed; and that by reason of the change in the contract the Southern Surety Company was released from any liability on the bond. The plaintiff contends that in purchasing the light plant then existing it was understood and agreed to by the defendant engineering company prior to the execution of the bond, and it was understood that the amount paid for the light plant was to be included in the $49,000 guaranteed by the defendants as being the amount within which the waterworks and electric light plants should be constructed. This was a question purely for the jury. The evidence on the part of the plaintiff tended to show that this item was included in the contract. As we

have seen, the contract between the plaintiff and the defendant was entered into on the 25th day of July, 1908. The plans and specifications covering the system of waterworks and electric light plant were submitted on December 31, 1908. The bond executed by the Southern Surety Company, guaranteeing the work within the limits specified, was executed on the 25th day of August, 1909. On the 2d day of January, 1909, the plaintiff wrote to the defendant, O'Neil Engineering Company, the following letter:

"The specifications of the waterworks and light plant for this place as furnished by you are received and filed. Please furnish a detailed statement showing the estimated cost of each item as well as the total cost of the plant. As soon as the statement is received, the council will take the necessary steps for calling the bond election."

On July 25, 1908, the following letter was written by the defendant O'Neil Engineering Company to the plaintiff:

"Should you desire to omit from contract dated July 25, 1908, the construction of the electric light system, there will be no charges due us for the preliminary work done by us in connection therewith, and for such plans and specifications as refer to the electric lighting system."

On August 9, 1909, the defendant O'Neil Engineering Company wrote the following letter to the plaintiff:

"In accordance with the terms of paragraph 7 of our contract, we are entitled to 1 per cent. of the estimated cost of $49,000, and we herewith inclose bill for $490.00."

On September 14, 1909, the plaintiff wrote to the defendant O'Neil Engineering Company as follows:

"I am inclosing draft for $402.50. Your estimate is $49,000, less $8,750.00 for pole lines, leaving $40,250.00, which you are entitled as per your agreement that you would not charge commission on the purchase price of the pole lines, 1 per cent. making $402.50."

On September 18, 1909, the following answer was sent by the defendant O'Neil Engineering Company:

"We beg to acknowledge receipt of yours of the 14th inclosing check for $402.50. Our mistake in billing you for the larger amount was due to having added in the cost of the pole line material in our estimated cost and in failing to eliminate that item in making up our charge."

On April 16, 1909, the electric light plant then existing in Lehigh was appraised. M. Griffin O'Neil, president of the O'Neil Engineering Company, was selected by the city as one of the appraisers, and the plant was appraised at $8,750. The issue as to whether

or not it was understood and agreed by and between the parties that the change was made before the execution of the bond, and whether or not, including this change, the waterworks system and the electric light plant should not cost exceeding $49,000, was fairly submitted to the jury and fully covered by the fifteenth instruction given by the court as follows:

"Evidence has been introduced before you tending to prove that there were several estimates made, and that changes were made in the original estimate. It is contended by the plaintiff that the cost of a part of the electric light plant in the sum of $8,750 was included in the estimate made by the defendant O'Neil Engineering Company, under which the waterworks system and the electric light plant were constructed. The defendant contends that it was not included, but that it was excluded. In this connection, you are instructed that you are to determine from the evidence whether or not it was included, and if you find that it was, you may consider this item in determining whether or not the cost of construction exceeded the estimate."

We are unable to see how the court could make this issue plainer to the jury. The evidence on the part of the plaintiff was that the purchase of the electric light plant was thoroughly discussed prior to entering into the contract with the defendant, and that it was understood between the parties that the purchase might be made. When the plant was valued, the plaintiff selected as its representative, Mr. O'Neil, the president of the defendant engineering company, and in the letter of September 17, 1909, supra, the defendant, at the time the draft for $402.50 was sent by the plaintiff, was informed that the estimate was $49,000, less the $8,750 for pole lines, which would leave $40,250 upon which the defendant was entitled to commissions as per the contract. There was no question at the time raised by the defendant O'Neil Engineering Co. that this amount was not correct and it is clearly shown that the purchase price of the electric light plant, to wit, $8,750, added to the $40,250, makes exactly $49,000. Besides, we are unable to see wherein there was any material change. The defendants contend that the contract called for plans and specifications for the construction of a waterworks and electric light system to be erected and constructed and contend further that purchasing the poles already erected in lieu of erecting the poles released the surety from liability under the bond, and in support of their contention cite a long array of authorities.

In view of our conclusions, it is unnecessary to differentiate the authorities presented, and show their inapplicability to the case at bar. There is no showing that it cost more to buy new poles, dig the holes, and erect the poles and stretch the wire than to buy poles already erected to which the wires were attached. The plaintiff had a right to suppose that the defendant O'Neil Engineering Company was skilled in planning, designing, and executing the work provided for in the contract, and that it possessed a practical knowledge of all the details appertaining to the work. It was supposed to be familiar with the qualities of the materials to be used and their cost, and, further, that it possessed the requisite skill and ability to enable it to perform the contract with care, skill, and ability, and not to exceed the sum named. It is not to be supposed that the plaintiff possessed this knowledge. If it had, there would have been no necessity for the employment of the defendant. Besides, it would appear rather unusual, and would have reached the degree of stultification on its part if the city in the first instance, being so careful in employing the defendant engineering company, and requiring that plans and specifications for the work and awarding the contract and for superintending the entire work be first submitted, and, in addition thereto, requiring a bond that the work should not exceed $49,000, should, without any apparent reason, change the entire contract and defeat the very purposes of the bond. It is a well-settled principle of law that immaterial changes which do not alter the general character of the work contemplated by the contract, or the general character of the materials necessary for its execution, do not result in releasing the surety from liability on the bond. C. J. vol. 9, p. 858; Fransioli v. Thompson et al., 55 Wash. 259, 104 Pac. 278. The contract provided for changes. This fact was known to the surety company, at least it is to be presumed that it had notice, as reference is made to the contract in the bond, and we find that the contract provided that changes might be made. The bond was executed more than one year after the execution of the contract. It is to be presumed that the surety executed the bond with full knowledge of all the terms of the contract. Hinton v. Stanton. 112 Ark. 207, 165 S. W. 299.

While it is true that the surety is not required to look beyond the bond as to its liability, and that it has not undertaken more than is therein expressed, and if alterations or changes are made by the original parties, which vary and alter the terms of the original contract by the substitution of other materials than those called for in the contract, so as to destroy its identity in the matter of performance. the surety is discharged if the alterations were made without the con-

sent of the surety; yet where the alteration is immaterial, or where it was provided by the contract and within the terms of the contract, and where the cost is not to exceed the amount mentioned or specified in the original contract, the surety would not be released from liability on the bond, in which it 'was guaranteed that the work should not 'exceed the price mentioned in the contract·,and bond.  Neuwirth et al. v. Moydell et al., 188 Mo. App. 467, 174 S. W. 206; Aetna Indemnity Co. v. City of Little Rock, 89 Ark. 95, 115 S. W. 960.  A surety, relying on the defense that alterations or changes had been made by the original parties to the contract, has the burden of proving that the changes were made.  Genera J Bonding & Casualty Co.· v. Beckville Ind. School Dist. (Tex. Civ. App.) 156 S. W. 1161.

Did the court commit error in the instructions given and in refusing to give the instructions asked for by the defendants? We have examined carefully the instructions given by the court, as well as the instructions asked for by the defendants and refused, and conclude that, taking the instructions as a whole, we fail to see wherein the substantial rights of the defendants have in any way been affected.  In a case of this nature, tried by able attorneys, where a great mass of testimony was introduced, many questions of law raised during the progress of the trial, and where the trial court is compelled to decide promptly on all questions presented, having in view the expedition of business in the court, it would be almost impossible for any judge, however learned or experienced, to be able in every ruling to follow the very letter of the law in every instance.  The appellate courts, recognizing these conditions, have wisely concluded that in all cases where on an examination of the entire record, and viewing the instructions as a whole, they can see that substantial justice has been done in the premises, such errors are regarded as harmless, and have refused to reverse the judgment of the trial court.

"Where the court hears all of the evidence, * * * and fairly instructs the jury on the law applicable to the case, and a verdict is returned within the issues and is reasonably supported by the evidence, the same will not be disturbed on appeal."  Ft. S. & W. R. Co. v. Chandler Cotton Oil Co., 25 Okla. 82, 106 Pac. 10.

See, to the same effect, Allen v. Shepherd, 69 Oklahoma, 169 Pac. 1115; Silurian Oil Co. v. Morrell, 71 Oklahoma, 176 Pac. 964.

Section 4791, Rev. Laws, 1910, provides:

"The court in every stage of action must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

After a careful review of the entire record, we conclude that the judgment of the trial court herein is supported by the evidence, and that if the court committed errors they were harmless.

The judgment of the trial court is therefore affirmed.

All the Justices concur, except RAINEY, J., disqualified and not participating.