**SHOBE v. SYKES et al.**

No. 23040. Nov. 20, 1934.

Guy D. Talbot and R. M. Chase, for plaintiff in error.

Titus & Hill and F. M. Gustin, for defendants in error.

PER CURIAM. This action was begun on the 27th day of September, 1927, by the plaintiff in error, M. L. Shobe, filing in the district court of Alfalfa county, a petition and affidavit in replevin, against Charley Sykes and Ed Sykes, as defendants, in which he claimed unqualified ownership of sertain cattle described therein.

The parties will be referred to in this opinion as they appeared in the lower court.

The sheriff's return shows 61 head of cattle to have been taken and after holding them 24 hours, delivered to the plaintiff. The defendants filed their answer in which they denied, generally and severally, the material allegations of the petition and affirmatively pleaded that on or about the 30th day of July, 1927, they borrowed $1,200 from the plaintiff and agreed to pay the sum of $100 for the use of the money for 30 days; that they gave as security for the loan a bill of sale to the cattle; that under the terms of the loan they were to have an additional 30 days if needed; that at the end of 30 days they advised plaintiff that they were not able to pay and would want additional time, which was acquiesced in by him; that on or about the 15th day of September, following, they arranged to secure the money, and advised plaintiff that they were ready to pay him $1,300. Plaintiff refused to accept the money and demanded the cattle; that the cattle were replevined on the 27th day of

September, 1927, that being within the 60-day limit plaintiff had allowed them. They alleged the bill of sale to be in fact a chattel mortgage. They admitted an indebtedness of $1,200, together with interest. They filed counterclaim and cross-petition in which they adopted the allegations of the answer; pleaded a lack of knowledge of the legal difference between a bill of sale and chattel mortgage; that they had no education, had known the plaintiff a long time and believed his representations as to the effect of the instrument they signed. They alleged he made these representations fraudulently and maliciously for the purpose of deceiving, oppressing, and defrauding them; that by reason of such fraudulent oppression and malice aforethought, they were entitled to receive the sum of $500 as exemplary damages. They further alleged that they were damaged in the loss of milk from a portion of the cows in the amount of $2 per day, and $100 from lack of care of the cattle while in possession of the plaintiff, but this was not submitted to the jury.

In paragraph No. 3 they plead usury and ask the sum of $200; in paragraph No. 4 an attorney's fee is asked because of the usury involved.

The allegation as to usury was not submitted to the jury.

Each of the parties to the litigation introduced competent evidence tending to prove the allegations in their pleadings.

The evidence of the plaintiff consists largely of his own testimony that he bought the cattle in July and left them in defendants' possession until September, and the introduction of a bill of sale signed by the two defendants.

Defendants' evidence as to the nature of the transaction was corroborated by one other witness.

Testimony as to the value of the cattle at the time they were taken by the plaintiff varied widely. The defendants' testimony was from $2,290 to more than $2,500.

At the close of the evidence the plaintiff tendered request for two instructions which were refused by the court and exceptions properly saved.

After the instructions had been given, the record shows the following:

"Mr. Talbot: Let the record show that the plaintiff objects and excepts to instructions Nos. 3, 4, 5, and 7 as given to the jury.

The Court: All right, allow them their exceptions."

This was the only attempt to save exceptions to the court.

After the cause was submitted the jury returned their verdict as follows:

"We, the jury, duly impaneled and sworn to try the issues in the above-entitled cause, do, upon our oaths, find

"For the defendants for a return of the property taken by writ of replevin, and if a return cannot be had, then for the sum of $1,817.07.

"Lewis Mott,
"Foreman."

In due time a motion for new trial was filed, and notice of appeal given, supersedeas bond was fixed, which bond was in due time approved, and petition in error was filed in this court.

Plaintiff in error, in his brief, confines himself to two propositions, as follows:

"First: Error in instruction to jury, and

"Second: Excessive damages appearing to have been given under the influence of passion or prejudice and error in the assessment of the amount of the recovery."

The first assignment of error is not properly before the court for its consideration. O. S. 1931, sec. 360, is as follows:

"A party excepting to the giving of instructions, or the refusal thereof, shall not be required to file a formal bill of exceptions; but it shall be sufficient to write at the close of each instruction, 'Refused and excepted to,' or, 'Given and excepted to,' which shall be signed by the judge."

This provision has been held mandatory in many cases. In the case of Scott v. Scott, 129 Okla. 176, 264 P. 159, the court said:

"Section 542, C. O. S. 1921, provides that exceptions to the giving of instructions or the refusal thereof may, be taken by a party writing at the close of each instruction, 'Refused and excepted to,' or, 'Given and excepted to,' which shall be signed by the judge. The requirements of this section are mandatory, and unless complied with, instructions complained of cannot be reviewed on appeal."

In State v. Oklahoma Railway Co., 153 Okla. 76, 4 P. (2d) 1009, in the first syllabus, the court says:

"Section 542, C. O. S. 1921, provides that exceptions to the giving of instructions or the refusal thereof may be taken by a party writing at the close of each instruction, 'Refused and excepted to,' or, 'Given and excepted to,' which shall be signed by the judge. The requirements of this section are mandatory, and unless complied with, instructions complained of cannot be reviewed."

See, also, Watson v. Doss, 151 Okla. 132, 3 P. (2d) 159; Allison v. Cubbison, 150 Okla. 116, 3 P. (2d) 677; Potter v. Bond, 98 Okla. 135, 224 P. 537; Whitehead v. Cook, 100 Okla. 282, 229 P. 254; Wayne Tank & Pump Co. v. Harper, 118 Okla. 274, 247 P. 985; Bennett v. American Nat. Bank of Enid, 130 Okla. 23, 264 P. 912.

Notwithstanding this, the instructions complained of fairly present the law governing the issues in this case, and instructions Nos. 3 and 4 cover the issues contended for by the plaintiff without prejudice to his rights and are free from the vices of plaintiff's requested instructions in that they do not impinge upon the province of the jury as to the weight of the evidence.

The second assignment of error presents more difficulty.

The verdict in this case is not usual in a replevin action. Such verdicts ordinarily provide for the return of the thing replevied, or its value; then, if proof justifies it, an award for the unlawful detention of the property involved, in some instances, exemplary damages.

However, the plaintiff does not complain of the form of the verdict, either in the motion for new trial, petition in error, or in his brief. His complaint is directed solely to the amount of money the jury found should be paid if the property could not be returned. The damages are based upon the court's instruction No. 6, as follows:

"The court instructs the jury that in case you find for the defendants, the measure of their damages would be the value of the cattle on the date they were replevined, less $1,200, with interest thereon from the 30th day of July, 1927, to the 27th day of September, 1927, at six per cent. per annum, plus interest at the rate of six per cent. per annum, on the difference, if any, between the $1,200, with interest thereon as above set out, and the value of the cattle on the date the replevin writ was levied to the present time."

To the giving of this instruction no exception was taken or attempted by either party to the action.

In examining the record, it is entirely possible that it was informally conceded that the cattle could not be returned. The direct question as to the whereabouts of the cat-

tle was not asked, but the plaintiff testified as follows:

"Q. When did you demand possession of the cattle? A. Along about the 25th or 26th of September, I just intended to get them shipped in time to get the money and take this note up in 60 days."

The court's instruction was more favorable to the plaintiff than his rights demanded in this: That it required the jury to deduct the sum the defendants admitted they owed the plaintiff from the amount of damages they found the defendants had suffered. Ray v. Navarre et al., 47 Okla. 438, 147 P. 1019.

The court's instruction in this case was evidently based upon Ray v. Navarre, supra; the third paragraph of the syllabus is as follows:

"In an action of replevin, where the defendants retain the property, the measure of damages is ordinarily the value of the property and damages for the detention, which is usually the interest on the value from the time of the taking or detention; but when the taking or detention, or both, are attended with circumstances of aggravation, the plaintiffs are entitled to more than compensatory damages and they should be allowed their full measure or redress in the action of replevin without compelling them to resort to an action to repossess themselves of the property unlawfully taken and to another for their damages."

The serious question that confronts us is whether or not the court was justified in permitting the jury to assess exemplary damages, for, as we shall see later, without this, the verdict cannot be sustained. It is true that no proper exception was saved to instruction No. 7, but the court's attention was at least directed to it, and in the motion for new trial, in the 10th subdivision thereof, the attention of the court was again called to this portion of his instruction, and it was within its discretion to grant a new trial. The statute is highly penal—and punishment should not be lightly imposed.

Upon appeal, however, the exercise of such discretion by the lower court will not be disturbed unless it manifestly appears that such discretion has been abused by disregard of the established rules of law. Crouch v. Crouch, 59 Okla. 181, 158 P. 573; (1916) St. Paul Fire & Marine Ins. Co. v. Peck, 59 Okla. 195, 158 P. 595; (1919) O'Neil Engineering Co. v. City of Lehigh, 75 Okla. 227, 182 P. 659.

Section 9962, O. S. 1931, provides:

"In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendants."

In re Ray v. Navarre, and in Lanyon v. Byus, supra, our courts have held:

"Exemplary damages may be recovered by the defendant in an action in replevin, where the plaintiff taking the property has been guilty of oppression, fraud or malice."

The facts in this case admitted, or established by the verdict of the jury, disclose that plaintiff loaned defendants $1,200 in money, and took a bill of sale as security; some two months later, cattle having advanced in price, the plaintiff declared the bill of sale an absolute conveyance in fraudulent disregard of the contract. That the defendants were not mentally normal was admitted by the plaintiff in his testimony:

"Q. You also knew these boys were not very bright, didn't you? A. I know they transacted a lot of business. Q. You know that neither of them can read or write, don't you? A. No, sir, they didn't appear as ignorant as you might think. Q. I will ask you if in all your dealings with these boys, if you didn't see—if you didn't know that these boys were not strong mentally? A. Well, not as strong as some boys."

Grudgingly admitted, but to be taken most strongly against him. There is no pretense that they had any education. Plaintiff had known them for a long time, and was thoroughly acquainted with their mental and educational deficiencies. These facts were sufficient to submit the question of exemplary damages to the jury. There is no question but that the action of the plaintiff was predicated upon fraudulent intent and the belief that he could oppressively deprive the defendants of the additional value that increase in the price of the stock had brought.

In view of the above, was the recovery excessive?

As we have seen, instruction No. 6 told the jury that they must first deduct from the value of the cattle the sum of $1,200, with practically two months' interest at six per cent. per annum, or roughly, $1,212. The evidence of the defendants as to the value of the cattle ranged from $2,290 to $2,552. The cattle were taken upon the 27th day of September, 1927, and the verdict was rendered on the 8th day of May, 1931; in other words, there were three years, seven months and eleven days from the date of the taking to the rendition of the verdict.

The interest at six per cent. amounted to 21.7 per cent. Applying that to the lowest valuation placed upon the cattle by the defendants' witness, we have actual damages of $1,311.92. If exemplary damages had been added to the full amount allowed by the court's instructions, it would have been about $5 less than the verdict. If, however, we take the highest valuation placed on the cattle by defendants' witnesses, there would have been actual damages in the sum of $1,630.78, and the verdict would have allowed but $146.29 of exemplary damages. If the full amount permitted by the court as exemplary damages had been added to the actual damages under the higher valuation, the verdict would have been more than $2,100.

"Where the action is for damages, and the testimony tends to prove a greater amount than the sum asked for, and the jury returns a verdict for much less than the amount asked for, the same will not be set aside on the ground that it is unreasonable." Salter v. Larison, 99 Okla. 245, 226 P. 585, and cases cited.

The judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys Guy L. Andrews, Frank D. McSherry, and Clark Nichols in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of the law and facts was prepared by Mr. Andrews and approved by Mr. McSherry and Mr. Nichols, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.